UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

ANNETTE SMITH,               :

                             :       08 Civ. 7888 (WHP)(RLE)

             Plaintiff,      :

                             :

    against                :       **ECF CASE**

                             :

NATIONAL BASKETBALL ASSOCIATION,   :
INC., and BERNARD TOLBERT,        :

                             :

           Defendants.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

PROSKAUER ROSE LLP
Howard L. Ganz (HG-8644)
Evandro C. Gigante (EG-7402)
1585 Broadway
New York, New York 10036-8299
Telephone 212.969.3000
Fax 212.969.2900
Email: hganz@proskauer.com
       egigante@proskauer.com
*Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................................ii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF RELEVANT FACTS ..........................................................................3

ARGUMENT ....................................................................................................................3

I. PLAINTIFF'S DENIAL-OF-PROMOTION CLAIM FAILS
AS A MATTER OF LAW...............................................................................4

    A. Plaintiff Cannot Satisfy The Second Prong Of The *Prima Facie* Case....................6

        1. Plaintiff Did Not Apply For A Particular Position .........................6

        2. Plaintiff Was Not Qualified For The Position She Claims
           To Have Been Denied ...................................................................7

        3. The Position Plaintiff Claims To Have Been Denied Was
           Not One For Which The NBA Was Seeking Applicants........................9

    B. Plaintiff Cannot Satisfy The Third And Fourth Prongs
       Of The *Prima Facie* Case .........................................................................10

II. PLAINTIFF'S RETALIATION CLAIM FAILS AS A MATTER OF LAW......................12

    A. Plaintiff Did Not Engage In Protected Activity.........................................13

    B. Plaintiff Was Not Subjected To Any Materially Adverse
       Employment Action ...................................................................................15

III. PLAINTIFF'S HOSTILE WORK ENVIRONMENT AND
CONSTRUCTIVE DISCHARGE CLAIMS FAIL AS A MATTER OF LAW....................17

    A. Plaintiff Was Not Subjected To A Hostile Work Environment................17

    B. Plaintiff Unreasonably Failed To Complain Of Any Harassing Conduct .................21

    C. Plaintiff Was Not Constructively Discharged.........................................22

IV. PLAINTIFF'S CLAIMS AGAINST DEFENDANT TOLBERT SHOULD
BE DISMISSED ...........................................................................................24

CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Abdu-Brisson v. Delta Air Lines, Inc.*,
239 F.3d 456 (2d Cir. 2001)................................................................................4

*Alphonse v. State of Conn. Dep't of Admin. Servs.*,
3:02 cv 1195, 2004 U.S. Dist. LEXIS 7239 (D. Conn. Apr. 21, 2004) ..................10

*Anderson v. Liberty Lobby*,
477 U.S. 242 (1986).........................................................................................3

*Arroyo v. WestLB Admin.*,
54 F. Supp. 2d 224 (S.D.N.Y. 1999), *aff'd without op.*, 213 F.3d 625, *reported in full*,
2000 U.S. App. LEXIS 9528 (2d Cir. May 9, 2000) ............................................23

*Baker v. AMTRAK*,
94 Civ. 0856, 1997 U.S. Dist. LEXIS 1314 (S.D.N.Y. Feb. 7, 1997) .....................10

*Banez v. N.Y. Foundling Hosp.*,
98 Civ. 518, 2001 U.S. Dist. LEXIS 13883 (S.D.N.Y. Sept. 6, 2001), *aff'd*, No. 01-
9187, 2002 U.S. App. LEXIS 13345 (2d Cir. 2002) ......................................13-14

*Blake v. Bronx Leb. Hosp. Ctr.*,
No. 02 Civ. 3827, 2007 U.S. Dist. LEXIS 75770 (S.D.N.Y. Oct. 10, 2007) ...........11

*Breland-Starling v. Disney Publ'g Worldwide*,
166 F. Supp. 2d 820 (S.D.N.Y. 2001).................................................................9

*Brennan v. Metro. Opera Ass'n*,
192 F.3d 310 (2d Cir. 1999).......................................................................18, 21

*Brightman v. Prison Health Servs., Inc.*,
62 A.D.3d 472 878 N.Y.S.2d 357 (1st Dept 2009)...............................................15

*Brown v. Coach Stores, Inc.*,
163 F.3d 706 (2d Cir. 1998)..................................................................6, 10, 11

*Burlington Indus., Inc. v. Ellerth*,
524 U.S. 742 (1998).................................................................................18, 21

*Burlington Northern & Santa Fe Railway Co. v. White*,
548 U.S. 53 (2006)............................................................................15, 16, 17

*Bynog v. SL Green Realty Corp.*,
05 Civ. 0305, 2007 U.S. Dist. LEXIS 19110 (S.D.N.Y. Mar. 20, 2007) (Pauley, J.) ...........20

*Byrne v. Telesector Res. Group, Inc.*,
No. 08-0101-cv, 2009 U.S. App. LEXIS 15493 (2d Cir. July 14, 2009) ...............................17

*Caldarola v. Calabrese*,
298 F.3d 156 (2d Cir. 2002)..............................................................................................3

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..........................................................................................................3

*Cordoba v. Beau Deitl & Assocs.*,
No. 02 Civ. 4951, 2003 U.S. Dist. LEXIS 22033 (S.D.N.Y. Dec. 2, 2003)...........................13

*Cruz v. Coach Stores, Inc.*,
202 F.3d 560 (2d Cir. 2000)..............................................................................................13

*Dawson v. Bumble & Bumble*,
246 F. Supp. 2d 301 (S.D.N.Y. 2003), *aff'd*, 398 F.3d 211 (2d Cir. 2005) ...........................19

*Dzaba v. Haythe & Curley*,
94 Civ. 1767, 1996 U.S. Dist. LEXIS 731 (S.D.N.Y. Jan. 25, 1996).........................................3

*Falso v. Salzman Group, Inc.*,
545 F. Supp. 2d 295 (W.D.N.Y. 2008) ................................................................................19

*Faragher v. City of Boca Raton*,
524 U.S. 775 (1998)...............................................................................................18, 21

*Ferraro v. Kellwood Co.*,
440 F.3d 96 (2d Cir. 2006)................................................................................................22

*Fincher v. Depository Trust & Clearing Corp.*,
06 Civ. 9959, 2008 U.S. Dist. LEXIS 70046 (S.D.N.Y. Sept. 17, 2008) (Pauley, J.).............23

*Forrest v. Jewish Guild for Blind*,
3 N.Y.3d 295 (2004) ..............................................................................6, 12, 18

*Fullard v. City of N.Y.*,
274 F. Supp. 2d 347 (S.D.N.Y. 2003)...................................................................................6

*Garone v. United Parcel Serv., Inc.*,
436 F. Supp. 2d 448 (E.D.N.Y. 2006) ................................................................................24

*Gobin v. N.Y. City Health & Hosp. Corp.*,
04 Civ. 3207, 2006 U.S. Dist. LEXIS 48952 (S.D.N.Y. July 19, 2006) (Pauley, J.) .............20

*Graham v. Long Island R.R.*,
230 F.3d 34 (2d Cir. 2000).................................................................................................12

*Gregory v. Daly,*
    243 F.3d 687 (2d Cir. 2001)............................................................................................14

*Guglielmo v. Marchon Eyewear, Inc.,*
    02 CV 5434, 2006 U.S. Dist. LEXIS 9146 (E.D.N.Y. Feb. 15, 2006) .....................9

*Harris v. Forklift Sys.,*
    510 U.S. 17 (1993)................................................................................................18, 19

*Holt v. Roadway Package Sys., Inc.,*
    506 F. Supp. 2d 194 (W.D.N.Y. 2007) ..................................................................9

*Hopper v. Banana Republic, LLC,*
    07 Civ. 8526, 2008 U.S. Dist. LEXIS 13503 (S.D.N.Y. Feb. 25, 2008) (Pauley, J.)..............24

*Hudson v. Int'l Bus. Machines Corp.,*
    620 F.2d 351 (2d Cir. 1980)............................................................................ 9-10

*James-Gray v. Hanes Hosiery, Inc.,*
    95 Civ. 9950, 1998 U.S. Dist. LEXIS 13016 (S.D.N.Y. Aug. 20, 1998) ................11

*Jimenez v. City of New York,*
    605 F. Supp. 2d 485 (S.D.N.Y. 2009)....................................................................11

*Kessler v. Westchester County Dep't of Soc. Servs.,*
    461 F.3d 199 (2d Cir. 2006)....................................................................................12

*Kinsella v. Rumsfeld,*
    320 F.3d 309 (2d Cir. 2003)......................................................................................7

*Mareno v. Madison Square Garden, L.P.,*
    98 Civ. 2719, 1999 U.S. Dist. LEXIS 15265 (S.D.N.Y. Sept. 28, 1999) (Pauley, J.)..............9

*Matlosz v. J.P. Morgan Chase,*
    03 Civ. 6235, 2005 U.S. Dist. LEXIS 20157 (S.D.N.Y. Sept. 3, 2005) ................13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986)............................................................................................3-4

*Maturine v. Am. Int'l Group, Inc.,*
    No. 04-CV-9064, 2006 U.S. Dist. LEXIS 80933 (S.D.N.Y. Nov. 6, 2006)............3

*Mauro v. Southern New England Telecomm's, Inc.,*
    208 F.3d 384 (2d Cir. 2000)......................................................................................6

*McDonald v. Gonzales,*
    No. 7:05-CV-55, 2007 U.S. Dist. LEXIS 21720 (N.D.N.Y Mar. 27, 2007) ............7

*Mugavero v. Arms Acres, Inc.*,
    No. 03 Civ. 05724, 2009 U.S. Dist. LEXIS 30431 (S.D.N.Y. Mar. 31, 2009)........................17

*Oncale v. Sundowner Offshore Servs., Inc.*,
    523 U.S. 75 (1998)................................................................................................18

*Osorio v. Source Enters.*,
    2006 U.S. Dist. LEXIS 63032 (S.D.N.Y. Sept. 1, 2006)...................................20-21

*Penn. State Police v. Suders*,
    542 U.S. 129 (2004)..........................................................................................22, 23

*Petrosino v. Bell Atl.*,
    385 F.3d 210 (2d Cir. 2004)...............................................................................7, 22

*Quinn v. Green Tree Credit Corp.*,
    159 F.3d 759 (2d Cir. 1998).....................................................................................8

*Rios v. Buffalo & Ft. Erie Pub. Bridge Auth.*,
    04-CV-375A, 2008 U.S. Dist. LEXIS 17911 (W.D.N.Y. Mar. 7, 2008), *aff'd*, No. 08-
    1675-cv, 2009 U.S. App. LEXIS 9959 (2d Cri. May 8, 2009) .........................20, 21

*Riscili v. Gibson Guitar Corp.*,
    605 F. Supp. 2d 558 (S.D.N.Y. 2009)...................................................................14

*Santiago v. City of N.Y.*,
    No. 05-CV-3668, 2009 U.S. Dist. LEXIS 30371 (E.D.N.Y. Mar. 31, 2009).........16

*Stetson v. NYNEX Serv. Co.*,
    995 F.2d 355 (2d Cir. 1993)..................................................................................22

*Thornley v. Penton Publ'g, Inc.*,
    104 F.3d 26 (2d Cir. 1997)......................................................................................8

*Tokio Marine &Fire Ins. Co. v. Rosner*,
    206 F. App'x 90 (2d Cir. 2006) ............................................................................19

*Tomka v. Seiler Corp.*,
    66 F.3d 1295 (2d Cir. 1995)..................................................................................19

*Velasquez v. Goldwater Mem'l Hosp.*,
    88 F. Supp. 2d 257 (S.D.N.Y. 2000).....................................................................14

*Williams v. N.Y. City Hous. Auth.*,
    61 A.D.3d 62, 872 N.Y.S.2d 27 (1st Dep't Jan. 27, 2009).....................................19

*Williams v. R.H. Donnelley, Corp.*,
    368 F.3d 123 (2d Cir. 2004)................................................................................8, 9

*Wilson v. N.Y.P. Holdings, Inc.*,
    05 Civ. 10355, 2009 U.S. Dist. LEXIS 28876 (S.D.N.Y. Mar. 31, 2009) ............................21

*Zakrzewska v. New Sch.*,
    598 F. Supp. 2d 426 (S.D.N.Y. 2009)........................................................................21

*Zakrzewska v. New Sch.*, 09-0611-cv (2d Cir. July 27, 2009) ........................................21

*Zolondek v. Worldwide Flight Servs.*,
    No. 02 CV 2030, 2006 U.S. Dist. LEXIS 95711 (E.D.N.Y. Aug. 28, 2006) ........................17

## STATUTES AND OTHER AUTHORITIES

42 U.S.C. § 2000e-3 ...............................................................................................13

Fed. R. Civ. P. 56(c) ...............................................................................................3

N.Y.C. Human Rights Law §§ 8-107, *et. seq.* ...................................................... *passim*

N.Y. Exec. Law § 296(1)(e).....................................................................................13

N.Y. Human Rights Law §§ 296, *et. seq.* ........................................................... *passim*

N.Y.C. Admin Code § 8-107(7)..........................................................................13, 15

# PRELIMINARY STATEMENT

Defendants National Basketball Association ("NBA") and Bernard Tolbert ("Tolbert") (collectively, "Defendants") submit this memorandum of law in support of their motion for summary judgment dismissing Plaintiff Annette Smith's Complaint in its entirety.

Plaintiff – who was employed as a Coordinator in the NBA's Security Department until she resigned in January 2008 – alleges that she was denied promotion to a manager position in that Department based on her gender, and that she was retaliated against, harassed and constructively discharged in violation of the New York State Human Rights Law §§ 296, *et. seq.* ("NYSHRL") and the New York City Human Rights Law §§ 8-107, *et. seq.* ("NYCHRL"). Because, based on the undisputed facts, there is no evidentiary or legal support for these claims, they should be dismissed.

Plaintiff's failure to promote claim is fundamentally flawed. The uncontested facts show that in order to hold the position of a Manager (or above) in the Security Department[1], one must have either an extensive law enforcement background or experience in the area of facilities security. By her own admission, Plaintiff – who held a clerical/quasi-administrative position in the Department – had neither, and thus was not qualified for the position of Manager in the Security Department. To the extent that Plaintiff's denial-of-promotion claim is premised on the contention that, while continuing to perform the duties of a Coordinator, she should have been accorded the title of "Manager," the undisputed fact is that there was no such position in the NBA Security Department. And, because no such position existed, Plaintiff has not shown –

---

[1] For ease of reference, throughout this Memorandum, we use the terms "Manager" or "Managers" to refer to those individuals in the Security Department who held or hold the titles of Manager or above (*i.e.*, Senior Manager, Director or Senior Director). *See* Smith Deposition Transcript ("Smith Tr.") 16:19-17:3, attached to the accompanying Declaration of Howard L. Ganz, Esq. ("Ganz Decl.") as Exhibit B.

indeed, cannot possibly show – that someone outside of her protected class was awarded the position she allegedly sought. On these incontestable facts, Plaintiff cannot satisfy the elements of a *prima facie* case of discrimination with respect to her denial-of-promotion claim.

Plaintiff's retaliation claim also fails as a matter of law – for at least two reasons. First, she did not engage in any protected activity. Plaintiff claims to have been retaliated against because she objected when Defendant Tolbert, the Senior Vice President for Security, decided to hire Adam Sassone as a Staff Assistant in the Security Department (a job at a level lower than the position held by Plaintiff). But Plaintiff objected to the hiring of Sassone *not* because Sassone is a male, but rather because she believed that Sassone was not qualified for the position in question and was being hired because he was a friend of Tolbert's family. Accordingly, her "opposition" conduct did not constitute protected activity. Second, Plaintiff cannot show, as she is required to show, that she suffered a materially adverse employment action as a consequence of her having engaged in any alleged "protected activity."

Similarly, Plaintiff's hostile environment and constructive discharge claims should be dismissed. Even if accepted in full measure, Plaintiff's assertions that, over the course of almost 17 years of employment at the NBA, three allegedly inappropriate comments were made in her presence and two allegedly inappropriate photographs came to her attention are plainly insufficient to support such claims. Indeed, while she was employed by the NBA, Plaintiff advanced no complaint concerning this alleged conduct. Moreover, both the hostile environment and constructive discharge claims are undermined by the undisputed fact that, *after* resigning from the NBA, Plaintiff immediately returned to work for the Security Department for a short period of time, doing precisely the same kind of work and working with the very same people she had previously.

Finally, Plaintiff's claims against Tolbert as an aider and abettor should be dismissed because she has failed to establish that the NBA engaged in any unlawful conduct whatsoever – a necessary predicate for an aiding and abetting claim.

## STATEMENT OF RELEVANT FACTS

The Defendants respectfully refer the Court to their Arguments below, as well as their accompanying Local Civil Rule 56.1 Statement of Material Undisputed Facts, for a complete recitation of the material undisputed facts.

## ARGUMENT

Summary judgment under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56 is appropriate where the moving party demonstrates that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A plaintiff may not defeat summary judgment merely with "conclusory allegations of discrimination" or retaliation. *Maturine v. Am. Int'l Group, Inc.*, No. 04-CV-9064, 2006 U.S. Dist. LEXIS 80933, at *15 (S.D.N.Y. Nov. 6, 2006). The non-moving party "may not rest on the allegations in its pleadings, but must adduce 'significant probative supporting evidence' demonstrating that a factual dispute exists." *Dzaba v. Haythe & Curley*, 94 Civ. 1767, 1996 U.S. Dist. LEXIS 731, at *5 (S.D.N.Y. Jan. 25, 1996) (*quoting Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)). As the Second Circuit has held, to defeat a motion for summary judgment, "[t]he party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he non-moving party must come forward with *specific facts* showing there is a genuine issue for trial.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 586-87 (1986)) (emphasis added).  And, "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

This case is ripe for summary judgment because the undisputed material facts show that Plaintiff's claims are wholly without merit.

## I. PLAINTIFF'S DENIAL-OF-PROMOTION CLAIM FAILS AS A MATTER OF LAW.

Plaintiff claims that she was denied a promotion to a Manager position in the Security Department due to her gender. *See* Complaint ("Compl.") ¶¶ 19-21, attached to the accompanying Ganz Decl. as Exhibit A; Smith Tr. 48:16-50:5.  As demonstrated below, however, Plaintiff has not established and cannot establish a *prima facie* case of discrimination.

Plaintiff was hired by the NBA as a Temporary Secretary in the Business Affairs Department in May 1991.  In February 1992, Plaintiff was hired on a regular basis as a Secretary in the Broadcasting Department, and in January 1994, Plaintiff was transferred into the Security Department.  In October 1996, Plaintiff was promoted to Staff Assistant in the Security Department.  Smith Tr. 7:11-17; 10:7-13; 11:15-12:9; 22:23-25.

As a Staff Assistant, Plaintiff was responsible for providing clerical and administrative support to the Manager-level employees in the Security Department – such as assisting them in the preparation of expense reports, transcribing notes of security investigations they had conducted and coordinating their travel schedules.  Plaintiff also provided clerical/administrative support in connection with certain special events – such as the NBA's Annual All Star Weekend, during which Plaintiff's duties included the compiling of security-related information provided by others into a Security Plan Manual and ensuring that attendees had the proper credentials.

Smith Tr. 23:14-25:7; 25:13-28:4; Tolbert Deposition Transcript ("Tolbert Tr.") 24:13-25:6, attached to the accompanying Ganz Decl. as Exhibit C.

On October 1, 2001, Plaintiff was promoted to the position of a Coordinator. As a Coordinator, Plaintiff continued to provide administrative and logistical support to the Managers in the Security Department. As part of her administrative duties, Plaintiff had some responsibility for delegating assignments to the other administrative staff in the Department and was, at times, involved in interviewing and hiring new administrative staff; but she did not directly supervise any administrative employees. Smith Tr. 29:10-13; 31:4-34:15; Tolbert. Tr. 19:10-15; 69:5-70:3.

In late August 2002, the NBA hired Bernard Tolbert as its Vice-President of Security, with responsibility for overseeing all security-related matters at the NBA. Tolbert Tr. 9:3-5, 12:14-13:3. After Plaintiff expressed to Tolbert her dissatisfaction with her salary (Smith Tr. 55:24-56:6), Tolbert reviewed Plaintiff's compensation; and in 2003 and 2004, he significantly increased Plaintiff's salary. Indeed, Plaintiff received a 10% increase in 2003 and an 8% increase in 2004. Smith Tr. 56:7-13; 57:12-14; 74:14-75:8; Ganz Decl. Ex. E. During this time and thereafter, as Plaintiff has acknowledged, there were no male Coordinators in the Security Department who were paid more than Plaintiff. Smith Tr. 78:23-79:5.

Plaintiff alleges that while she was employed as a Coordinator, working under Tolbert's direction, she sought to be promoted to a Manager position. Smith Tr. 54:23-55:4. To establish a *prima facie* case of gender discrimination based on a failure to promote, a plaintiff must show that: "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's

qualifications." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709 (2d Cir. 1998). Should a plaintiff make this showing, the burden shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the decision not to promote, and if the defendant discharges that burden, the plaintiff must ultimately show that the employer's proffered reasons are a pretext for unlawful discrimination. *See Mauro v. Southern New England Telecomm's, Inc.*, 208 F.3d 384, 387-88 (2d Cir. 2000). These standards, which were developed under federal discrimination statutes, apply equally to claims made under the NYSHRL and NYCHRL. *See Fullard v. City of N.Y.*, 274 F. Supp. 2d 347, 354 n.3 (S.D.N.Y. 2003) ("[t]he standards that apply to Title VII employment discrimination claims are identical to the legal principles applicable to the plaintiff's claims under the New York Human Rights Law and the Administrative Code of the City of New York"); *Forrest v. Jewish Guild for Blind*, 3 N.Y.3d 295, 305 n.3 (2004). Applying these standards to the undisputed facts, it is clear that Plaintiff cannot establish a *prima facie* case as a matter of law.

A. **Plaintiff Cannot Satisfy The Second Prong Of The *Prima Facie* Case.**

To satisfy the second prong of the *prima facie* case, Plaintiff must show: (i) that she applied for a particular position; (ii) that she was qualified for that position; and (iii) that the position for which she applied and was qualified was a job for which the employer was seeking applicants. *See Brown*, 163 F.3d at 709. Plaintiff has not satisfied and cannot satisfy any of these three elements.

1. **Plaintiff Did Not Apply For A Particular Position.**

First, plaintiff has failed to show – or even allege – that she applied for a particular Manager position in the NBA Security Department. To the contrary, all she did was express her general desire to be promoted to a "manager" position – indeed, to a "manager" position that did

not exist.  Smith Tr. 55:5-12; 62:14-63:24.  As a matter of law, generalized requests of this kind

cannot serve to establish a *prima facie* case.  *See Petrosino v. Bell Atl.*, 385 F.3d 210, 227 (2d

Cir. 2004) ("the second element of a *prima facie* case cannot be established merely with

evidence that a plaintiff generally requested promotion consideration."); *Kinsella v. Rumsfeld*,

320 F.3d 309, 314-15 (2d Cir. 2003) (affirming summary judgment where plaintiff "does not

allege and the record does not indicate that he applied for specific positions or that positions

became available and were filled by others, but merely that he repeatedly requested a

promotion."); *McDonald v. Gonzales*, No. 7:05-CV-55, 2007 U.S. Dist. LEXIS 21720, at *27

(N.D.N.Y Mar. 27, 2007) (granting summary judgment where "Plaintiff has failed to proffer

evidence sufficient to establish that he did in fact apply for a specific position held open by the

employer.  His broad conclusory allegations that he applied for promotion . . . without evidence

that identifies the positions for which he purportedly applied is insufficient . . ..") (*citing

Petrosino*, 385 F.3d at 227).

### 2. Plaintiff Was Not Qualified For The Position She Claims To Have Been Denied.

Second, Plaintiff has failed to show that she was qualified for a Manager position of the

kind that existed in the NBA Security Department.

Managers in the Security Department perform security-related functions that vary

depending on whether the Managers are on the Basketball Operations side of the Department or

are involved in Facilities Security.  Tolbert Tr. 15:12-16:25; 73:2-14.  Managers in the

Basketball Operations function (referred to by Plaintiff as "Security Managers") are responsible,

for example, for investigating the conduct or alleged conduct of players both on and off the

playing court, working with law enforcement authorities, helping to maintain the integrity of the

NBA, providing for and overseeing security at NBA events, and performing other security-

related functions. Glover Deposition Transcript ("Glover Tr.") 10:2-16, attached to the accompanying Ganz Decl. as Exhibit D; *see also* Smith Tr. 15:11-20. Most Security Managers (to adopt Plaintiff's phraseology) are also responsible for working with team security representatives on individual team-related security matters, either in the NBA or in the Women's National Basketball Association ("WNBA"). Glover Tr. 10:2-16; 41:20-42:4. There is no dispute that the NBA has long required that all Security Managers in the Basketball Operations area have law enforcement backgrounds (Tolbert Tr. 75:2-8; Smith Tr. 69:20-70:2); and, it is similarly undisputed that the Security Managers all have extensive experience with the New York City Police Department, the Federal Bureau of Investigation, and other law-enforcement agencies. Smith Tr. 69:20-71:14; Tolbert Tr. 11:9-18; 66:23-67:4; 74:15-75:13; Glover Tr. 10:17-22; 40:11-18.

Managers in the Facilities Security area are responsible for maintaining security standards at the NBA's facilities (such as offices and retail establishments), including, for example, ensuring the proper operation of security cameras and alarm systems, as well as overseeing the security guards employed at those facilities. Tolbert Tr. 15:12-16:8; 75:22-76:3.

Plaintiff acknowledges that she had no background or experience in law enforcement (Smith Tr. 72:6-10), and she similarly lacked any facilities security experience (*see* Smith Tr. 7:11-8:16). The record, meanwhile, is clear that those who held Manager positions in the Security Department were required to have and did have that kind of experience.

As the Second Circuit has made clear, an employer has the right to set its own qualification standards – *i.e.,* "being 'qualified' refers to the criteria the employer has specified for the position." *See Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 127 (2d Cir. 2004) (*quoting Thornley v. Penton Publ'g, Inc.*, 104 F.3d 26, 29 (2d Cir. 1997)). Without dispute,

Plaintiff here did not satisfy the criteria specified by the NBA and, accordingly, her denial-of-promotion claim must fail. *See Williams*, 368 F.3d at 127 (plaintiff, who admitted that she lacked the requisite experience, "simply failed to show that she was qualified for the Account Manager position . . .."); *Holt v. Roadway Package Sys., Inc.*, 506 F. Supp. 2d 194, 205 (W.D.N.Y. 2007) (summary judgment granted where plaintiff was not qualified for the positions sought given that he lacked the required educational background and work experience); *Guglielmo v. Marchon Eyewear, Inc.*, 02 CV 5434, 2006 U.S. Dist. LEXIS 9146, at *29 (E.D.N.Y. Feb. 15, 2006) (plaintiff failed to establish that she was qualified for the position sought); *Breland-Starling v. Disney Publ'g Worldwide*, 166 F. Supp. 2d 820, 824 (S.D.N.Y. 2001) ("plaintiff has failed to demonstrate that she was competent to assume a supervisory position occupied by a CPA who exercised accounting skills plaintiff lacks."); *Mareno v. Madison Square Garden, L.P.*, 98 Civ. 2719, 1999 U.S. Dist. LEXIS 15265, at *11 (S.D.N.Y. Sept. 28, 1999) (Pauley, J.) (plaintiff was unqualified for the position and his "mere disagreement with [the manager's] judgment does not create an issue of fact as to whether he was qualified . . ., particularly in light of plaintiff's admissions regarding his lack of skills.").

3.     **The Position Plaintiff Claims To Have Been Denied Was Not One For Which The NBA Was Seeking Applicants.**

Plaintiff's effort to make out a *prima facie* case on her denial-of-promotion claims also fails because the position she allegedly sought was *not* one for which the NBA was seeking applicants.

The uncontested fact is that the Security Department simply did not have a position along the lines of the one allegedly sought by Plaintiff. Tolbert Tr. 70:4-12, 74:10-25; Smith Tr. 58:20-59:12; Glover Tr. 39:12-40:18. As a consequence, the NBA was not – and, indeed, could not have been – seeking applicants for such a position. *See Hudson v. Int'l Bus. Machines Corp.*,

620 F.2d 351, 354 (2d Cir. 1980) (plaintiff "offered no proof . . . that any particular position in management development, personnel or equal opportunity was even available during [the relevant] period."); *Baker v. AMTRAK*, 94 Civ. 0856, 1997 U.S. Dist. LEXIS 1314, at *25 (S.D.N.Y. Feb. 7, 1997) (plaintiff "fails to offer any proof that the position for which he claims he applied was available at the time of his application.").[2]

Indeed, as Plaintiff herself acknowledged, had she been promoted as she desired, she would have done nothing more than "the same thing that [she] had been doing as a coordinator." Smith Tr. 55:5-12.

### B. Plaintiff Cannot Satisfy The Third And Fourth Prongs Of The *Prima Facie* Case.

The third prong of the *prima facie* case requires a showing that a plaintiff was rejected for the position in question; the fourth prong requires a showing that the position sought by the plaintiff remained open following her application and that the employer continued to seek applicants having the plaintiff's qualifications. *See Brown*, 163 F.3d at 709. Plaintiff here has not made either of these showings.

As for the third prong – Plaintiff simply was not and could not have been rejected for a position that did not exist. *See Alphonse v. State of Conn. Dep't of Admin. Servs.*, 3:02 cv 1195, 2004 U.S. Dist. LEXIS 7239, at *16 (D. Conn. Apr. 21, 2004) ("[s]ince it is undisputed that Ms. Alphonse never applied to DAS for an open position as a Transitional Manager and that there was no such opening available, it follows that she most certainly could not have been rejected for the position, and, further, the position could not, then, thereafter have remained open while DAS continued to seek applicants having Ms. Alphonse's qualifications, all as required for a *prima*

---

[2] Although, as Plaintiff will likely allege, other employees in the Department agreed that Plaintiff would have made a good "manager," in some theoretical way, the undisputed facts are that she was not qualified for any Manager position of the kind that existed in the Security Department.

*facie* case.") (*citing Brown*, 163 F.3d at 709); *James-Gray v. Hanes Hosiery, Inc.*, 95 Civ. 9950, 1998 U.S. Dist. LEXIS 13016, at *24-25 (S.D.N.Y. Aug. 20, 1998) ("[plaintiff] could not have been rejected from the position because there was no position to be rejected from").

As for the fourth prong – it is well-settled that even where a plaintiff unsuccessfully applies for a position, if the employer does not fill the position, then no *prima facie* case has been made out. *See Jimenez v. City of New York*, 605 F. Supp. 2d 485, 498-99 (S.D.N.Y. 2009) (despite evidence that applications were made for two positions, "it is undisputed that the defendant did not fill either of these positions," and "[t]herefore, Plaintiff fails to establish the fourth prong of a failure to promote claim."); *Blake v. Bronx Leb. Hosp. Ctr.*, No. 02 Civ. 3827, 2007 U.S. Dist. LEXIS 75770, at *22 (S.D.N.Y. Oct. 10, 2007) ("[s]ince no applicants were sought and the position did not remain open, Plaintiff has failed to satisfy the second and fourth elements of his *prima facie* case.").

Here, Plaintiff's own testimony that *no one* else was considered for the position she purportedly sought (because it did not exist), and *no one* else was promoted or hired into the position makes clear her failure to satisfy her burden of showing that the position remained open and that the NBA filled it with someone outside her protected class:

> Q.   After Mr. Tolbert arrived in 2002 and up until the time that you left the NBA in early 2008, was there any manager position that was filled in the security department by someone else which you think you should have been awarded?
>
> A.   ***No. There wasn't a manager position*** . . ..
>
> *       *       *
>
> Q.   Just to be clear, so from 2002 until 2008 there was no one in the security department who was promoted into a manager position; is that correct?
>
> A.   No.

Q.      Was there anyone in that same time frame, 2002 to 2008, who was hired from the outside into a manager or higher position?

A.      Yes.

Q.      And who was that?

A.      That would be Greg Robinson, Randall Innes, Joel Downing. That's all I can remember from our group, from our side.

Q.      Were the positions, manager or director, whichever they were, into which those people were hired, were those positions that you think you should have been promoted to?

A.      ***No, not those positions.  Those were security manager positions.***

Smith Tr. 58:20-25, 59:22-60:16 (emphasis added).

Based upon the foregoing, Plaintiff's denial-of-promotion claim should be dismissed.[3]

## II.     **PLAINTIFF'S RETALIATION CLAIM FAILS AS A MATTER OF LAW.**

To establish a *prima facie* case of retaliation, Plaintiff must demonstrate that: (1) she engaged in protected activity; (2) the NBA was aware of her protected activity; (3) she was subjected to a material adverse employment action; and (4) a causal connection exists between the protected activity and the adverse action. *See Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006); *Forrest*, 3 N.Y.3d at 312-13 (same).

_____

[3] Tellingly, Plaintiff fails to identify a single, similarly-situated Coordinator in the Security Department outside of her protected class who was treated more favorably than she. Smith Tr. 78:23-79:5. In fact, the only two male "comparators" mentioned by Plaintiff at any time in her deposition – Thaddeus Foreman ("Foreman") and Randall Innis ("Innis") – were not at all similarly situated to Plaintiff. Foreman, who works in Facilities Security, was promoted from an Assistant to a Coordinator; and Innis, who works in Basketball Operations Security, was promoted from a Manager to a Senior Manager (or Director). Smith Tr. 59:13-15; 60:19-61:18. Barring any evidence that Plaintiff was treated less favorably than a similarly situated male counterpart, and given her own testimony that Tolbert awarded her "significant" pay increases during his first two years as the head of the Security Department, Plaintiff simply cannot establish a claim of discrimination as a matter of law. *See Graham v. Long Island R.R.*, 230 F.3d 34, 39, 40 (2d Cir. 2000) (to raise an inference of discrimination based on disparate treatment, "plaintiff must show she is 'similarly situated in all material respects' to the individuals with whom she seeks to compare herself") (citation omitted).

Plaintiff's own testimony reveals that she was not retaliated against as a matter of law – because she has failed to show either that she engaged in any protected activity or that she was subjected to any materially adverse employment action by the NBA.

## A.    <u>Plaintiff Did Not Engage In Protected Activity.</u>

In order to establish protected activity under both the NYSHRL and the NYCHRL, Plaintiff must show that she opposed practices made unlawful by the discrimination statutes. *See* N.Y. Exec. Law § 296(1)(e) (prohibiting employers from discriminating "against any person because he or she has opposed any practices forbidden under this article"); N.Y.C. Admin Code § 8-107(7) (prohibiting employers from retaliating "in any manner against any person because such person has [] opposed any practice forbidden under this chapter."). Similarly, under the related federal anti-discrimination statutes, the term "protected activity" refers to "action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000), *quoting* 42 U.S.C. § 2000e-3.

Accordingly, courts in this Circuit routinely dismiss retaliation claims on summary judgment where the plaintiff can raise no triable issue as to whether he or she engaged in protected activity. *See Matlosz v. J.P. Morgan Chase*, 03 Civ. 6235, 2005 U.S. Dist. LEXIS 20157, at *20 (S.D.N.Y. Sept. 3, 2005) (no protected activity found where "the August 2002 complaint did not allege discrimination because of age, sex, race, or any other protected characteristic, and the plaintiff testified as much in his deposition."); *Cordoba v. Beau Deitl & Assocs.*, No. 02 Civ. 4951, 2003 U.S. Dist. LEXIS 22033, at *29-30 (S.D.N.Y. Dec. 2, 2003) (dismissing retaliation claim where "complaints did not pertain to age discrimination – the particular offense against which the ADEA is directed – and thus do not constitute 'protected activity' within the meaning of the statute."); *Banez v. N.Y. Foundling Hosp.*, 98 Civ. 518, 2001

U.S. Dist. LEXIS 13883, at *14 (S.D.N.Y. Sept. 6, 2001), *aff'd*, No. 01-9187, 2002 U.S. App. LEXIS 13345 (2d Cir. 2002); *see also Riscili v. Gibson Guitar Corp.*, 605 F. Supp. 2d 558, 565 (S.D.N.Y. 2009) (to establish protected activity the plaintiff "must show that he had 'a good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'") (*citing Gregory v. Daly*, 243 F.3d 687, 701 (2d Cir. 2001)); *Velasquez v. Goldwater Mem'l Hosp.*, 88 F. Supp. 2d 257, 264 (S.D.N.Y. 2000).

When asked to explain the basis for her retaliation claim, Plaintiff testified that she believed she had been retaliated against by Tolbert because she had "strongly disagreed with his hiring of Adam Sassone." Smith Tr. 50:14-20. But Plaintiff's objection to Tolbert's hiring of Adam Sassone does not and cannot give rise to a claim of retaliation – because, according to Plaintiff herself, that objection was not premised on her opposition to some, or any, allegedly discriminatory practice. Indeed, Plaintiff did *not* assert at the time and does *not* assert even now that her reason for opposing the hire was to enforce a right protected by the anti-discrimination statutes. To the contrary, Plaintiff testified that her opposition to Sassone's hire was based on her belief that Sassone was not qualified for the Staff Assistant position, and was being hired only because of his prior relationship with Tolbert or members of Tolbert's family. The fact that Sassone was a man, Plaintiff said, had nothing at all to do with her objection to his being hired:

> Q. And you thought that having Mr. Sassone come to work in the security department, even in the lowest level position, was going to cause division within the department, correct?
>
> A. Yes.
>
> Q. And that was because, was it not, of Mr. Sassone's prior relationship with Mr. Tolbert or members of his family, correct?
>
> A. Yes.

| Q. | And your -- was it your concern or fear that that prior relationship that Sassone had with Mr. Tolbert and/or Mr. Tolbert's family, would lead to Mr. Sassone getting more favorable treatment than others? |
|----|---|
| A. | That's what -- I guess. |
| Q. | You didn't object to Mr. Sassone's hire because he was a man, did you? |
| A. | No, no, not at all. |

Smith Tr. 149:24-150:18; *see also* Smith Tr. 85:25-86:16; 138:16-139:11.

Because Plaintiff's stated reasons for opposing Sassone's hire were in no way related to Sassone's gender or any reasonable belief that Tolbert's actions constituted some form of gender discrimination, Plaintiff cannot show that she engaged in any protected activity.

**B.    Plaintiff Was Not Subjected To Any Materially Adverse Employment Action.**

Even if Plaintiff were able to show that she engaged in protected activity, she cannot satisfy the third element of the *prima facie* case for retaliation – *i.e.,* that she suffered a materially adverse employment action.

The Supreme Court in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), held that Title VII's retaliation provision "covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant." *Id.* at 57. To constitute an adverse action, the act "[must] be harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.*; *see Brightman v. Prison Health Servs., Inc.,* 62 A.D.3d 472, 427 878 N.Y.S.2d 357, 358 (1st Dept 2009) (applying *Burlington Northern* standard to claims arising under the NYSHRL and NYCHRL); N.Y.C. Admin. Code § 8-107(7) ("the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity.").

Plaintiff's allegations, even if assumed to be true for purposes of this motion, simply do not satisfy the *Burlington Northern* standard. Smith Tr. 50:21-51:15, 131:8-132:23.

Following her opposition to Sassone's hire, Plaintiff claims that she was removed from a project (the so-called "Safe Net Project") that she had been working on with Warren Glover, a Director in the Department. *See* Smith Tr. 50:21-51:15.[4] However, when asked to explain the reasons why she had stopped working on the Safe Net Project, Plaintiff testified that this had occurred because she was scheduled to leave the NBA and because the 2008 All-Star event "became a priority." Smith Tr. 51:10-15. Thus, Plaintiff's "removal" actually had *nothing to do* with retaliation, but instead was dictated by the needs of the business and her own decision to resign.

In addition, after Plaintiff objected to Sassone's hiring, she claims that Tolbert's attitude toward her changed. Smith Tr. 129:6-130:2; 131:4-9. ("[h]e was just very cold, anything you wanted to do, he was against it."). She alleges, in particular, that: (1) Tolbert did not sufficiently respond to a request she made to attend a training session (instead, he asked her to make her request through another manager); (2) Tolbert and others "seemed to forget" about compensatory time that she had scheduled to take off (Smith Tr. 131:10-132:23); and (3) after Sassone was hired, Tolbert approved Sassone's vacation requests rather than refer those requests to Plaintiff. Smith Tr. 132:24-134:5.

At most, these alleged actions constitute "petty slights, minor annoyances, and [a] simple lack of good manners," which do not give rise to a retaliation claim. *Burlington Northern*, 548 U.S. at 68; *Santiago v. City of N.Y.*, No. 05-CV-3668, 2009 U.S. Dist. LEXIS 30371, at *42 (E.D.N.Y. Mar. 31, 2009) (granting summary judgment where "[p]laintiff's other claims, such as

---

[4] Safe Net is an online database maintained by the Security Department that enables NBA players to retrieve information regarding security matters. Smith Tr. 51:19-23.

failure to train and denial of meal relief or compensatory time, are similarly inconsequential.");

*Mugavero v. Arms Acres, Inc.*, No. 03 Civ. 05724, 2009 U.S. Dist. LEXIS 30431, at *31

(S.D.N.Y. Mar. 31, 2009) ("[p]laintiff has not offered evidence that the schedule change caused

her anything more than inconvenience."); *Zolondek v. Worldwide Flight Servs.*, No. 02 CV 2030,

2006 U.S. Dist. LEXIS 95711, at *47 (E.D.N.Y. Aug. 28, 2006) (no adverse action where

"[p]laintiff posits only that the attitudes of all the Worldwide employees (both supervisors and

co-workers) changed after plaintiff filed the EEOC charge."); *see also Byrne v. Telesector Res.*

*Group, Inc.*, No. 08-0101-cv, 2009 U.S. App. LEXIS 15493, at *9 (2d Cir. July 14, 2009)

(because the employer's "decisions did not adversely affect the conditions of [plaintiff's]

employment in any material way, the district court properly dismissed plaintiff's retaliation

claims . . . ."). In fact, it bears noting that throughout her employment with the NBA, Plaintiff

was *never* disciplined, reprimanded, or demoted. Smith Tr. 120:25-121:16.

    Accordingly, even if true, Plaintiff's allegations do not come close to suggesting that she

suffered "materially adverse actions" that "could well dissuade a reasonable worker from making

or supporting a charge of discrimination." *See Burlington Northern*, 548 U.S. at 57.

## III.    PLAINTIFF'S HOSTILE WORK ENVIRONMENT AND CONSTRUCTIVE DISCHARGE CLAIMS FAIL AS A MATTER OF LAW.

### A.    Plaintiff Was Not Subjected To A Hostile Work Environment.

    Plaintiff's claim that she was forced to endure a hostile work environment on the basis of

her gender should be dismissed because the conduct she alleges falls woefully short of the

standard necessary to state such a claim.

    To state an actionable hostile environment claim under the NYSHRL, a plaintiff must

show that her "workplace is permeated with 'discriminatory intimidation, ridicule, and insult that

is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create

an abusive working environment.'" *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (citation and quotations omitted); *Forrest v. Jewish Guild for Blind*, 3 N.Y.3d 295, 310 (applying the *Harris* standard to claims arising under the NYSHRL). The discrimination statutes are not intended to create a code of civility in the workplace; and thus, not every instance of verbal harassment rises to the level of an actionable hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (the "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'") (*quoting Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). The conduct must be objectively severe or pervasive in order to meet this standard; a plaintiff's subjective beliefs are not enough. *Harris*, 510 U.S. at 21; *Forrest*, 3 N.Y.3d at 311 ("conduct must both have altered the conditions of the victim's employment by being subjectively perceived as abusive by the plaintiff, and have created an objectively hostile or abusive environment – one that a reasonable person would find to be so") (*citing, Harris*, 510 U.S. at 21).

In determining whether the alleged conduct is sufficiently hostile so as to alter the conditions of employment, courts consider the "frequency of the conduct; [] the severity of the conduct; [] whether the conduct is physically threatening or humiliating, or a mere offensive utterance;" and "whether it unreasonably interferes with an employee's work performance." *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 319 (2d Cir. 1999) (*citing Harris*, 510 U.S. at 23. The Second Circuit has emphasized that "[a]s a general matter, 'isolated remarks or occasional episodes of harassment will not merit relief under Title VII; in order to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive.'" *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998) (*quoting*

*Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 n.5 (2d Cir. 1995). Plaintiff must also establish that the harassment occurred because of her sex. *See Dawson v. Bumble & Bumble*, 246 F. Supp. 2d 301, 325 (S.D.N.Y. 2003), *aff'd*, 398 F.3d 211 (2d Cir. 2005).

Even under the recently modified NYCHRL standard, summary judgment is appropriate where "the alleged discriminatory conduct in question does not represent a 'borderline' situation but one that could only be reasonably interpreted by a trier of fact as representing no more than petty slights or trivial inconveniences." *Williams v. N.Y. City Hous. Auth.*, 61 A.D.3d 62, 80, 872 N.Y.S.2d 27, 41 (1st Dep't Jan. 27, 2009).

Applying any of the foregoing standards, Plaintiff's allegations fall far short of establishing a hostile work environment.

Plaintiff claims that over the course of her employment with the NBA, she was subjected to the following "harassment" by Tolbert: (1) in response to a disagreement between Plaintiff and another (female) administrative assistant, Tolbert allegedly exclaimed "Women!" (Comp. ¶ 28, Smith Tr. 35:6-39:15, 81:4-11);[5] (2) during Adam Sassone's interview, and in Plaintiff's presence, Tolbert allegedly asked Sassone if he minded performing administrative work, which he described as "women's work," and explained to Sassone that the Staff Assistant position did not "take a great amount of intelligence" (Compl. ¶¶ 26-27; Smith Tr. 83:23-86:16); (3) on one occasion in 2004 or 2005, Tolbert allegedly made a joke about women being needed only in the kitchen and the bedroom of a house (Smith Tr. 81:20-83:22); and (4) Plaintiff was allegedly asked to photocopy two photographs, which she believed were sexually inappropriate. *See*

---

[5] Plaintiff did not actually hear Tolbert say the word "women," but rather testified that she was told by Tolbert's assistant that he had uttered that word. Smith Tr. 39:6-7 ("Q. And did you hear Bernie say women? A. No. I don't [sic] hear him."). Hearsay allegations, of course, are not sufficient to defeat summary judgment. *See Falso v. Salzman Group, Inc.*, 545 F. Supp. 2d 295, 300 n.2 (W.D.N.Y. 2008) ("[t]his statement is pure hearsay, and as such, cannot defeat summary judgment.") (*citing Tokio Marine &Fire Ins. Co. v. Rosner*, 206 F. App'x 90, 95 (2d Cir. 2006)).

Compl. ¶ 29; Smith Tr. 90:23-99:22. (Copies of these photographs are annexed to the Ganz Decl. as Exhibits F and G.)[6]

Taken together, these incidents – which are alleged to have occurred over a period of years – are not severe or pervasive, and certainly do not give rise to a hostile work environment. *See Rios v. Buffalo & Ft. Erie Pub. Bridge Auth.*, 04-CV-375A, 2008 U.S. Dist. LEXIS 17911, at * 7 (W.D.N.Y. Mar. 7, 2008) (summary judgment granted where the alleged harassment "consisted primarily of isolated offensive remarks, jokes and cartoons"), *aff'd*, No. 08-1675-cv, 2009 U.S. App. LEXIS 9959 (2d Cri. May 8, 2009); *Bynog v. SL Green Realty Corp.*, 05 Civ. 0305, 2007 U.S. Dist. LEXIS 19110, at *23-25 (S.D.N.Y. Mar. 20, 2007) (Pauley, J.) (no hostile work environment where plaintiff alleged that she was subjected to approximately six comments concerning her race and gender, and "was also exposed to pornography and touched in an inappropriate manner.") (collecting cases); *Gobin v. N.Y. City Health & Hosp. Corp.*, 04 Civ. 3207, 2006 U.S. Dist. LEXIS 48952, at *15-16 (S.D.N.Y. July 19, 2006) (Pauley, J.) (isolated comments about one's race, color and national origin, "transpiring over [plaintiff's] two-year employment 'were infrequent and episodic' and thus, cannot form the basis of a hostile work environment claim") (collecting cases); *Osorio v. Source Enters.*, 2006 U.S. Dist. LEXIS 63032, at *16 (S.D.N.Y. Sept. 1, 2006) ("plaintiffs have failed to adduce evidence sufficient to support a

---

[6] There is no dispute that one of these photographs (Ganz Decl. Ex. G) was used by Tolbert in connection with a Security Department presentation made at an NBA Rookie Transition Program ("RTP"), an orientation program that NBA rookie players are required to participate in when they join the NBA. *See* Smith Tr. 91:22-92:15; 96:18-97:17; Ganz Decl. Ex. H (Complete 2006 RTP Presentation). The RTP is intended to encourage new players to avoid situations that may raise security concerns while they are playing in the NBA. Smith Tr. 92:5-93:6; Ganz Decl. Ex. H. All of the rookies in attendance at the RTP are males and most are in their early 20's, or younger. Smith Tr. 93:7-15. With respect to the other photograph (Ganz Decl. Ex. F), Plaintiff claims that it too was shown to her in connection with her organizing materials for an RTP presentation. Smith Tr. 91:13-94:14. However, while Tolbert recalls seeing this photograph, he testified that it was *not* used in connection with an RTP presentation, and that he was unaware of its origins. Tolbert Tr. 85:8-87:8.

juror in reasonably finding that the pictures, the offensive screen saver, and one isolated incident of men in a mailroom watching a pornographic movie were objectionable enough and pervasive enough to create a hostile work environment.").

Like the factual allegations made in the cases cited above, the isolated comments and photographs at issue here are both innocuous and "simply too infrequent and episodic to constitute a hostile work environment." *Rios*, 2008 U.S. Dist. LEXIS 17911, at *7 ("plaintiff identified only about six specific instances of misconduct over a thirteen-year period of time.").[7]

For the same reasons, Plaintiff's allegations do not amount to a hostile work environment under the NYCHRL. *See Wilson v. N.Y.P. Holdings, Inc.*, 05 Civ. 10355, 2009 U.S. Dist. LEXIS 28876, at *89 (S.D.N.Y. Mar. 31, 2009) (isolated gender-based comments directed at plaintiffs over the course of a number of years do not amount "to more than . . . petty slights and inconveniences.").

**B.** **Plaintiff Unreasonably Failed To Complain Of Any Harassing Conduct.**

Plaintiff's NYSHRL claim against the NBA should also be dismissed because she failed to comply with the Company's established harassment complaint procedures.[8] *See Burlington Indus., Inc.*, 524 U.S. 742; *Faragher*, 524 U.S. 775.

---

[7] Plaintiff also has adduced no evidence that Tolbert's conduct, as alleged, "unreasonably interfere[d] with [her] work performance," as she must in order to establish a hostile work environment. *See Brennan*, 192 F.3d at 319.

[8] The NBA also asserts that Plaintiff's NYCHRL claim should be dismissed on *Faragher/Ellerth* grounds. We recognize that the issue of whether the *Faragher/Ellerth* affirmative defense is available to employers under the NYCHRL was recently addressed by Judge Kaplan in *Zakrzewska v. New Sch.*, 598 F. Supp. 2d 426, 434-36 (S.D.N.Y. 2009), and that Judge Kaplan held that it was not. We note, however, that the matter was certified for interlocutory appeal to the Second Circuit (*id.* at *26-27), and that the Second Circuit has recently certified the question for review by the New York Court of Appeals. *See Zakrzewska v. New Sch.*, 09-0611-cv (2d Cir. July 27, 2009).

Under *Faragher/Ellerth*, where a plaintiff was not subject to an adverse employment action, the employer will not be liable for a supervisor's alleged harassment so long as the employer can show that (1) it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior" (*i.e.*, by maintaining an EEO policy that provides a complaint procedure); and (2) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer, or to avoid harm otherwise" (*i.e.*, by failing to make use of the complaint procedure). *See Petrosino v. Bell Atl.*, 385 F.3d 210, 225 (2d Cir. 2004); *Penn. State Police v. Suders*, 542 U.S. 129, 148-49 (2004).

The undisputed – and dispositive – facts are that the NBA maintains anti-harassment and EEO policies that set forth a clear and well-established complaint procedure (Smith Tr. 111:3-112:4; Ganz Decl. Ex. I), that Plaintiff was aware of and never made use of that procedure (Smith Tr. 111:13-16; 112:5-7; 160:12-19), and that she has offered no justification for her failure to do so. *See Ferraro v. Kellwood Co.*, 440 F.3d 96, 103 (2d Cir. 2006) (defendant carries its burden "by first introducing evidence that the plaintiff failed to avail herself of the defendant's complaint procedure and then relying on the absence or inadequacy of the plaintiff's justification for that failure."). Accordingly, Plaintiff has failed to satisfy her obligations under *Faragher/Ellerth*, and thus her hostile work environment claim against the NBA should be dismissed.

## C. Plaintiff Was Not Constructively Discharged.

A constructive discharge occurs when an employer has deliberately made an employee's working conditions so intolerable that a reasonable person in the employee's situation would be compelled to resign. *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355 (2d Cir. 1993). Establishing a

constructive discharge is a heavy burden, and one that Plaintiff here has not met and cannot meet.

Even if Plaintiff can show that the conduct with which she claims to have been confronted rose to the level of a hostile work environment (which, as demonstrated above, she cannot), that alone would not be sufficient to establish a constructive discharge. *See Suders*, 542 U.S. at 147 (noting that a constructive discharge entails "something more" than a hostile environment); *Arroyo v. WestLB Admin.*, 54 F. Supp. 2d 224, 232 (S.D.N.Y. 1999) ("[t]o prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment."), *aff'd without op.*, 213 F.3d 625, *reported in full*, 2000 U.S. App. LEXIS 9528 (2d Cir. May 9, 2000). Plaintiff's constructive discharge claim fails for a number of reasons.

First, because Plaintiff has not established a hostile work environment, she cannot prove – as a matter of law – that she was constructively discharged. *See Fincher v. Depository Trust & Clearing Corp.*, 06 Civ. 9959, 2008 U.S. Dist. LEXIS 70046, at *14 (S.D.N.Y. Sept. 17, 2008) (Pauley, J.) ("[b]ecause the Court has dismissed the hostile work environment claim, DTCC's motion for summary judgment on the constructive discharge claim is also granted.").

Second, Plaintiff's conduct just after her resignation is entirely at odds with any notion that she was "constructively discharged." Following her January 2008 resignation from the NBA – which she now characterizes as a "constructive discharge" – Plaintiff was asked by the NBA whether she would return to work and assist the Security Department during the upcoming 2008 All-Star Game events. As a matter of undisputed fact (and only days following the submission of her resignation), Plaintiff agreed to do so, and returned to work in the Security Department with the same people (including Tolbert) for a period of time during All-Star Weekend in

February 2008. Smith Tr. 121:21-122:14. Her doing so – *i.e.* her agreeing to work in the very same environment and with the very same people that she now says made her working conditions intolerable – entirely undermines any claim that those conditions were so intolerable that she was forced to resign.

Third, when asked at her deposition to explain how and when she was "discharged," as alleged in the Complaint, Plaintiff simply responded: "I wasn't discharged, I resigned." Smith Tr. 50:12-13; 171:25-172:7. And, in fact, on January 22, 2008, Plaintiff submitted a resignation in writing to the NBA, which advanced no suggestion that she felt herself compelled to resign. *See* Smith Tr. 50:10-13, 119:7-24; Ganz Decl. Ex. J.

For the foregoing reasons, Plaintiff's constructive discharge claim should be dismissed.

## IV.  PLAINTIFF'S CLAIMS AGAINST DEFENDANT TOLBERT SHOULD BE DISMISSED.

Finally, Plaintiff's claims against Defendant Tolbert should also be dismissed. Because Plaintiff has not established that the NBA engaged in any unlawful conduct, she cannot maintain her claim that Tolbert aided and abetted any discrimination or retaliation as a matter of law. *See Hopper v. Banana Republic, LLC*, 07 Civ. 8526, 2008 U.S. Dist. LEXIS 13503, at *9-10 (S.D.N.Y. Feb. 25, 2008) (Pauley, J.) ("[s]ince summary judgment for Defendants is granted on Hopper's underlying city and state discrimination claims, Defendants' motion for summary judgment is also granted on the aiding and abetting claims."); *Garone v. United Parcel Serv., Inc.*, 436 F. Supp. 2d 448, 473 (E.D.N.Y. 2006) ("because the Court finds that Plaintiff has failed to present a jury question on whether the conduct alleged created a hostile work environment, whether or not she was constructively discharged or retaliated against, the individual defendants are entitled to summary judgment on the NYCHRL and NYSHRL discrimination claims.").

## **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' Motion for Summary

Judgment and dismiss the complaint in its entirety.


Dated:   July 29, 2009
         New York, New York

Respectfully Submitted,

PROSKAUER ROSE LLP

By: *Howard L. Ganz*
PROSKAUER ROSE LLP
Howard L. Ganz (HG-8644)
Evandro C. Gigante (EG-7402)
1585 Broadway
New York, NY  10036-8299
Telephone:  212.969.3000
Fax:  212.969.2900
E-mail:  hganz@proskauer.com
         egigante@proskauer.com
*Attorneys For Defendants*