PROSKAUER ROSE LLP
Howard L. Ganz (HG-8644)
Evandro C. Gigante (EG-7402)
1585 Broadway
New York, NY  10036-8299
Telephone 212.969.3000
Fax 212.969.2900
Email:  hganz@proskauer.com
         egigante@proskauer.com
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
ANNETTE SMITH,

               Plaintiff,

  against

NATIONAL BASKETBALL ASSOCIATION,
INC., and BERNARD TOLBERT,

               Defendants.
------------------------------------- X

08 Civ. 7888 (WHP)(RLE)

**ECF CASE**

**DEFENDANTS' STATEMENT OF MATERIAL UNDISPUTED FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, Defendants National Basketball Association ("NBA") (incorrectly identified as National Basketball Association, Inc.) and Bernard Tolbert ("Tolbert") (collectively, "Defendants"), by their attorneys, Proskauer Rose LLP, submit the following Statement of Material Undisputed Facts Pursuant to Local Civil Rule 56.1 in support of their Motion for Summary Judgment.

Background

1.      Plaintiff Annette Smith ("Plaintiff") was hired by the NBA as a Temporary Secretary in the Business Affairs Department in or about May 1991.  Smith Deposition

Transcript ("Smith Tr.") 7:11-14, attached to the accompanying Declaration of Howard L. Ganz, Esq. ("Ganz Decl.") as Exhibit B. In or about February 1992, Plaintiff was hired on a regular basis as a Secretary in the Broadcasting Department. Smith Tr. 7:11-17; 10:7-13.

2.  On or about January 3, 1994, Plaintiff was transferred into the Security Department as a Secretary, and in or about October 1996, she was promoted to Staff Assistant. Smith Tr. 11:15-12:9, 22:23-25.

3.  As a Staff Assistant, Plaintiff was responsible for providing clerical and administrative support to the Manager-level employees in the Security Department with respect to, among other things, assisting in the preparation of expense reports, transcribing notes of security investigations, coordinating travel schedules, processing the paperwork related to drug testing and helping to coordinate various administrative functions (such as the issuance of credentials) at NBA special events, including the annual Security Conference and the NBA All-Star Game.[1] Smith Tr. 23:14-28:4; Tolbert Deposition Transcript ("Tolbert Tr.") 24:13-25:6, attached to the accompanying Ganz Decl. as Exhibit C.

4.  With respect to the All Star event, Plaintiff's responsibilities included assembling security-related information provided by others into a manual and helping to set up an office to serve as a command center. Smith Tr. 25:13-28:4.

5.  On or about October 1, 2001, Plaintiff was promoted to the position of a Coordinator. Smith Tr. at 29:10-13.

---

[1] For ease of reference, throughout this Statement of Material Undisputed Facts, we use the terms "Manager" or "Managers" to refer to those individuals in the Security Department who held or hold the titles of Manager or above (*i.e.*, Senior Manager, Director or Senior Director). Smith Tr. 16:19-17:3.

6. As a Coordinator, Plaintiff continued to provide administrative and logistical support to the managers in the Security Department as she had done previously. Smith Tr. 31:4-34:14.

7. In addition to her administrative functions, as a Coordinator Plaintiff also had some responsibility for delegating assignments to the other administrative staff in the Department and was, at times, involved in interviewing and hiring new administrative staff. Smith Tr. at 31:4-23; 34:12-15; Tolbert Tr. 19:10-15; 69:5-70:3.

8. In her capacity as a Coordinator, however, Plaintiff was not responsible for the direct supervision of any administrative employees. Tolbert Tr. 19:10-15; 69:5-70:3.

9. In late August 2002, the NBA hired Bernard Tolbert ("Tolbert") as its Vice-President of Security with responsibility for overseeing all security-related matters at the NBA. Tolbert Tr. 9:3-5; 12:14-13:3.

10. During a meeting following Tolbert's arrival, Plaintiff expressed to Tolbert her dissatisfaction with her salary. Smith Tr. 55:24-56:6. Tolbert reviewed Plaintiff's compensation; and in 2003 and 2004, significantly increased her pay. Smith Tr. 56:7-13, 57:12-14; 74:14-75:8; Ganz Decl. Ex. E (Plaintiff's Salary History).

11. Plaintiff received a 10% increase in 2003 and an 8% increase in 2004. Smith Tr. at 74:14-75:8; Ganz Decl. Ex. E.

12. In 2007, when Plaintiff's salary as a Coordinator was increased to $61,979, Plaintiff did not consider herself to be underpaid. Smith Tr. 75:24-76:7.

13. There were no Coordinators in the Security Department who were paid more than Plaintiff. Smith Tr. 78:23-79:5.

Facts Relating to Plaintiff's Denial-of-Promotion Claim

14. Plaintiff alleges that while she was employed as a Coordinator, she should have been promoted to a Manager position in the Security Department. Smith Tr. 54:23-55:4.

15. Managers in the Security Department perform security-related functions. These functions vary depending on whether the Managers are on the Basketball Operations side or are involved in Facilities Security. Tolbert Tr. 15:12-16:25; 73:2-14.

16. Managers in the Basketball Operations function (referred to by Plaintiff as "Security Managers") are responsible for investigating the conduct or alleged conduct of players both on and off the playing court, working with law enforcement authorities, helping to maintain the integrity of the NBA, providing for and overseeing security at NBA events, and other security-related functions. Glover Deposition Transcript ("Glover Tr.") 10:2-16, attached to the accompanying Ganz Decl. as Exhibit D; *see also* Smith Tr. 15:11-20. Most Security Managers are also responsible for working with team security representatives on individual team-related security matters, either in the NBA or in the Women's National Basketball Association ("WNBA"). Glover Tr. 10:2-16; 41:20-42:4.

17. All Security Managers in the Basketball Operations area are required to have law enforcement backgrounds. Tolbert Tr. 75:2-8; Smith Tr. 69:20-70:2. Accordingly, all such Managers have extensive experience with the New York City Police Department, the Federal

4

Bureau of Investigation, and other similar law-enforcement agencies. Smith Tr. 69:20-71:14; Tolbert Tr. 11:9-18; 66:23-67:4; 74:15-75:13; Glover Tr. 10:17-22; 40:11-18.

18. Managers in the Facilities Security area are responsible for maintaining security standards at the NBA's facilities, including, for example ensuring the proper operation of security cameras and alarm systems, as well as overseeing the security guards employed at those facilities. Tolbert Tr. 15:12-16:8; 75:22-76:3.

19. Plaintiff does not have a background in law enforcement or facilities security, nor does she have any prior experience in these areas. Smith Tr. 7:11-8:16; 72:6-10.

20. Absent this experience, Plaintiff was not qualified for a Manager position in the Security Department. Tolbert Tr. 70:4-9; 74:10-25, 76:8-13.

21. Plaintiff maintains that had she been promoted to a Manager, her responsibilities would have remained the same as those she performed in the Coordinator role – *i.e.,* primarily clerical or administrative. Smith Tr. 55:5-12.

22. There are no Manager-level positions in the Security Department in which the incumbent performs the clerical/administrative duties of a Coordinator, and there are no Manager positions in the Department that fit Plaintiff's qualifications. Tolbert Tr. 70:4-12; 74:10-25; Smith Tr. 58:20-59:12; Glover Tr. 39:12-40:18.

23. Between 2002 and 2008, there were no Manager positions filled in Security Department to which Plaintiff believed she was entitled; and, in fact, during that period, there was no one promoted to a Manager position in the Security Department. Smith Tr. at 58:20-59:12; 59:22-60:2.

24. During that same time period (*i.e.*, 2002 to 2008), Greg Robinson ("Robinson"), Randall Innis ("Innis") and Joel Downing ("Downing") were hired by the NBA as Security Managers. Smith Tr. 60:3-10. Plaintiff acknowledges that she was not qualified for, and should not have been promoted into, the positions that were filled by Robinson, Innis and Downing. Smith Tr. 60:3-16.

25. Although the NBA maintains a job posting system, Plaintiff never applied for any positions outside of the Security Department while at the NBA. Smith Tr. 44:25-46:4.

Facts Relating to Plaintiff's Retaliation Claim

26. Plaintiff claims that she was retaliated against by Tolbert "after [she] strongly disagreed with his hiring of Adam Sassone." Smith Tr. at 50:14-20.

27. In or about August 2007, the NBA hired Adam Sassone ("Sassone") as a Staff Assistant. Tolbert Tr. 28:7-9; Smith Tr. 140:10-12. Sassone was interviewed for the Staff Assistant position in or about July 2007 by Tolbert and Plaintiff. Tolbert Tr. 25:15-17; Smith Tr. 140:7-9.

28. Plaintiff opposed the hiring of Sassone for the Staff Assistant position because she believed that he was not qualified for the position (Smith Tr. 85:25-86:16, 138:16-21; Tolbert Tr. 44:20-45:4), and because of Sassone's prior relationship with Tolbert or members of Tolbert's family. Smith Tr. 149:24-150:18.

29. Plaintiff did not oppose Sassone's hire because he is a male or on account of any gender-related concern. Smith Tr. at 150:16-18.

6

30. Following her objection to Sassone's hire, Plaintiff claims that she was removed from a project called "Safe Net", an online database maintained by the Security Department that NBA players can log onto and retrieve information regarding security matters. Smith Tr. at 50:21-51:23.

31. When asked to explain the reasons for why she stopped working on the Safe Net Project, Plaintiff testified that this had occurred because she was scheduled to leave the NBA and because the 2008 All-Star event had "became a priority." Smith Tr. 51:10-15.

32. Plaintiff further claims that following her continued opposition to Sassone's hire, Tolbert was "cold" to her (Smith Tr. 131:4-9), in that (1) Tolbert did not sufficiently respond to a request she made to attend a training session (instead, he asked her to make her request through another manager) (Smith Tr. 131:10-13; 131:24-132:9), (2) Tolbert and others, "seemed to forget" about compensatory time that she had scheduled to take off (Smith Tr. 131:17-23; 132:10-23), and (3) after Sassone was hired, Tolbert had approved Sassone's vacation requests rather than refer those requests to Plaintiff. Smith Tr. 132:24-134:5.

Facts Relating to Plaintiff's Hostile Work Environment Claim

33. Plaintiff alleges that Tolbert made three inappropriate comments in her presence – (i) that, when told about an argument between Plaintiff and another female employee, Tolbert allegedly exclaimed, "Women" (Smith Tr. 35:6-39:15, 81:4-11); (ii) that, while interviewing Sassone, Tolbert described the work Sassone would do as a Staff Assistant as "women's work," and added that the Staff Assistant Position did not take a "great amount of intelligence" (Smith Tr. 83:23-86:16); and (iii) that, on one occasion some three or four years before Smith left the

7

NBA, Tolbert joked that women were needed in only two rooms of a home, the kitchen and the bedroom. Smith Tr. 81:20-83:22.

34. Plaintiff did not actually hear Tolbert say the word "women", but rather testified that she was told by Tolbert's assistant that he had uttered that word. Smith Tr. 39:6-7.

35. Plaintiff also claims that she was required to photocopy two photographs, which she believed were sexually inappropriate (Smith Tr. at 90:23-99:22), copies of which are annexed as Exhibits F and G to the accompanying Ganz Decl.

36. The NBA maintains a Respect in the Workplace Policy, which includes polices relating to Equal Employment Opportunity ("EEO") and Anti Harassment. Smith Tr. 111:3-16; Ganz Decl. Ex. I.

37. The Respect in the Workplace Policy also contains a clear and well-established complaint procedure that employees can use to report alleged violations of the EEO policy. Smith Tr. 111:17-22; Ganz Decl. Ex. I.

38. Plaintiff was aware of and never made use of the NBA's complaint procedure by making any complaints of discrimination or harassment. Smith Tr. 111:23-112:7 ("Q. Did you ever make use of this procedure? A. No. By the time – no."); 160:12-19.

Facts Relating to Plaintiff's Constructive Discharge Claim

39. On January 22, 2008, Plaintiff submitted her written resignation to the NBA. Smith Tr. 50:10-13; 119:7-24; Ganz Decl. Ex. J. Nowhere in that resignation did Plaintiff indicate that she had felt compelled to resign. Ganz Decl. Ex. J.

40. As she testified, Plaintiff was not discharged, but rather resigned from the NBA. Smith Tr. 50:12-13 ("I wasn't discharged, I resigned."); 171:25-172:7.

41. While employed by the NBA, Plaintiff was never disciplined, reprimanded, or demoted, nor did she ever have her pay reduced. Smith Tr. 120:24-121:12. Rather, Plaintiff's pay continuously increased until her resignation. Smith Tr. 74:14-75:8; 121:13-16.

42. Following the announcement of her resignation in January 2008, Plaintiff was asked whether she would return to work for the NBA and assist the Security Department during the upcoming 2008 All-Star Weekend. Smith Tr. 121:21-122:14.

43. Plaintiff agreed, and returned to work in the Security Department with the same people (including Tolbert) for a short period of time during All-Star Weekend in February 2008. Smith Tr. 121:21-122:14.

Dated: New York, New York
July 29, 2009

PROSKAUER ROSE LLP

By: /s/ Howard L. Ganz
Howard L. Ganz (HG-8644)
Evandro C. Gigante (EG-7402)
1585 Broadway
New York, NY 10036-8299
Telephone: 212.969.3000
Fax: 212.969.2900
E-mail: hganz@proskauer.com
egigante@proskauer.com
*Attorneys For Defendants*